IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAJAT WIRES PRIVATE LIMITED, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| AMERICAN STEEL INDUSTRIES, INC., | : | No. 12-1997 |
| Defendant. | : | |

## MEMORANDUM OPINION

Plaintiff Rajat Wires Private Limited ("Rajat"), an Indian steel manufacturer and seller, claims Defendant American Steel Industries, LLC ("ASI"), a Pennsylvania corporation, breached a contract by failing to pay $153,618.00 for the purchase of steel bars.[1] ASI asserts a counter breach of contract claim, alleging Rajat shipped damaged steel for ASI to sell in the United States on an agency basis.[2] It also seeks reimbursement for fees and storage costs totaling $22,925.00.

Based on the testimony presented during the October 7, 2013 binding bench trial,[3] and for the following reasons, I find by a preponderance of the evidence that ASI breached its contract

---

[1] The Court has jurisdiction based on diversity of citizenship and the parties agree that Pennsylvania law, including the provisions of the Uniform Commercial Code, apply. See 28 U.S.C. § 1332.

[2] An agent is an individual who contacts and establishes customers to purchase goods from the seller and receives a fee or commission for their services. See Zeno v. Ford Motor Co., Inc., 480 F. Supp. 2d 825, 841 (W.D. Pa. 2007) ("The basic elements of agency are 'the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking.'" (quoting Scott v. Purcell, 415 A.2d 56, 60 (Pa. 1980)).

[3] The parties have agreed to a binding, non-appealable bench trial and have waived the requirement of detailed findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)(1).

with Rajat and Rajat is awarded $153,618.00 in damages and applicable interest. Purchase orders were the only written agreement between the parties for the sale of steel bars. Rajat and ASI did not have an agency agreement. After accepting the steel, ASI was obligated to pay the contracted price and failed to do so, thus breaching the purchase order contracts.

I. <u>Law</u>

A contract for the sale of $500 or more of goods is not enforceable absent a sufficient writing showing a contract between the parties, signed by the party against whom enforcement is sought. 13 Pa. C.S. § 2201(a). A contract may be made "in any manner sufficient to show agreement, including conduct by other part[y] which recognizes the existence of such a contract." Id. § 2204(a). Generally, the seller is obligated to deliver the goods and the buyer must accept and pay in accordance with the parties' contract. Id. § 2301. The buyer, however, may accept, reject, or accept and reject in part nonconforming goods. Id. § 2601(1)-(3).

Acceptance occurs when the buyer: (1) after a reasonable opportunity to inspect, tells the seller the goods are conforming or he will retain them despite nonconformity; (2) fails to reject; or (3) acts inconsistent with the seller's ownership. Id. § 2606(a)(1)-(3). However, acceptance made with knowledge of nonconformity can be revoked if the buyer has a reasonable assumption the seller will seasonably, i.e., within a reasonable period of time, cure a defect. See id. § 2607(b). Rejection must be made within a reasonable time after their delivery or tender and is ineffective unless the buyer seasonably notifies the seller. See id. § 2602(a). A seller may recover the price of the accepted goods from the buyer when he fails to pay the contracted price. See id. §§ 2607(a), 2709(a)(1).

II. Discussion

Barry Bernsten, ASI's Managing Partner, received Rajat's email address from Mangesh Kandharkar, the CEO of Kalyani Steels, an Indian steel manufacturer unaffiliated with Rajat. Bernsten then sent Rajat an email requesting steel bars. Rajat and ASI communicated by phone and email, and agreed that Rajat would send ASI steel. See Ex. 16, Rohit's 9/12/10 Email to Bernsten. Bernsten offers no other evidence of any agreement on precise terms of the parties' business relationship.

Although the parties dispute the circumstances that prompted the first steel shipment, they agree that ASI sent Rajat purchase orders in September, November, and December 2010 for, collectively, 141 metric tons of steel bars for $198,618.00. See Ex. 1, Purchase Orders. Rajat shipped steel consistent with the terms of the purchase orders. ASI maintains that these purchase orders fail to constitute the parties' agreement for several reasons.

First, ASI argues that it reached an agreement with Kalyani that was then transferred to Rajat. See Ex. 18, Bernsten's 10/12/10 Email to Mangesh and Rohit Sachdev, director and manager of Rajat's Mumbai operations ("A few months ago I came to an agreement and shook hands with Mangesh and Kalyani Steel's CEO, confirming a structure and program to market CF Bars in North America"); Ex. 12, Bernsten's 5/11/11 Email to Rohit ("The deal discussed with Mangesh prior to any shipments was based on my representing Kalyani on an agency basis and paid a fee"). ASI has failed to assert any legal basis for an agency agreement to be transferred to another party by referral, without Rajat knowing of, or assenting to, the agreement. In his emails to Rohit, Bernsten asked only that Rohit comment on ASI and Kalyani's agreement, not that Rajat enter into an agency contract with ASI. See Ex. 13, Bernsten's 9/8/10 Email to Mangesh and forwarded to Rohit ("Need comments on my agreement w/[Kalyani Steel] so we can come to

3

a definitive agreement"); Ex. 18, Bernsten's 10/12/10 Email to Mangesh and Rohit ("I sent several requests asking to confirmation [sic] of the program and confirmation of the terms and conditions, of which all were ignored."). There is no evidence that Rajat agreed to any alleged terms between ASI or Kalyani.

ASI also argues that Rajat's failure to respond to its emails mentioning a "program" between ASI and Kalyani meant that Rajat had agreed to use ASI as its agent to sell steel. See Ex. 14, Bernsten's 9/9/10 Email to Mangesh and Rohit; Ex. 18, Bernsten's 10/13/10 Email to Mangesh and Rohit. Rajat's silence, however, establishes the absence of Rajat and ASI's "meeting of the minds" that ASI would be Rajat's agent to sell steel in the United States.

The only definite terms of the steel sale are memorialized in the purchase orders. Kulbhushan Sachdev, Rajat's president, and Rohit testified that Rajat entered into a sales agreement with ASI, it never requested ASI to be its agent, and ASI never asked to be Rajat's agent. See Zeno, 480 F. Supp. 2d at 841.

Neither Rajat, nor ASI, described their companies' relationship in typical agency terms.[4] Kulbhushan, Rohit, and Bernsten testified that the typical agency practice is to invoice and ship the materials directly to the customer. Here, ASI was invoiced for the steel purchase, received the steel shipment, and Rajat did not know the identity of ASI's potential customers. Rohit also

---

[4] Bernsten explained that ASI sold large amounts of Rajat's steel shipment, which he considered to be rusted and secondary steel or scrap, to third parties for use in manufacturing automobile brakes. Amazingly, Bernsten said that he retained some of sale proceeds to protect ASI against a possible products liability action for his sale of poor quality steel.

ASI concedes Rajat is entitled to at least an additional $50,000.00, but that it kept that portion of the money because customers threatened litigation over the damaged steel. No litigation has been initiated against ASI by those customers. Thus, even if Bernsten truly believed that he was Rajat's agent, he failed to deliver all of the money ASI received from its customers to Rajat. ASI's performance was inconsistent with an agency agreement. See Ex. 4, ASI Invoices.

4

asked Bernsten for a line of credit, which signifies that Rohit believed Bernsten to be a buyer, rather than an agent. See Ex. 18, Bersten's 10/12/10 Email to Mangesh and Rohit ("I am advised by Rohit that the [line of credit] will be required for the 1st 2-3 containers").

Second, ASI claims that it provided the purchase orders only to enable Rajat to export the steel from India. Bernsten contends he received a "panicked" phone call from Rohit stating Rajat could not ship the steel to the United States without purchase orders. Bernsten, without ever having done business with Rajat, asserts he then completed the "false" purchase orders to present to Indian export officials. Bernsten failed to provide a rational explanation for why he sent the orders, rather than telling Rajat to keep the steel in India until the alleged agency agreement was formalized. He also fails to credibly explain why he completed the false purchase orders to bypass customs for a foreign corporation with whom he had never done business.[5] Moreover, Bernsten cannot recall how he sent the purchase orders to Rajat and claims he was told to put a different date on the orders than the date he was sending the forms. He fails to present any corroborating evidence for this claim, such as a fax receipt or email from a scanned document.[6]

Contrary to ASI's claims, the purchase orders ASI sent to Rajat constituted contracts for the sale for steel bars between the two companies. See 13 Pa. C.S. § 2204(a). The orders contain ASI's address as the place of shipment, the amounts of steel ordered by ASI, and the price to be paid by ASI. See Ex. 1, Purchase Orders. Payment for the steel was due 30 days after release and clearance from Philadelphia. See id.

---

[5] Crediting Bernsten's testimony would require believing that Rajat and ASI conspired to defraud customs officials with a sham sale. Bersten's explanation that he was only trying to deceive Indian Customs, and not United States Customs, is irrelevant.

[6] Although there is some merit to Bernsten's claim that Rajat told him what to put in the purchase order, i.e., listing specific tonnage, this communication alone does not void the purchase order contracts. See Ex. 1, Purchase Orders.

5

After completing the purchase orders as a buyer, ASI had the option to accept, reject, or accept and reject in part, the steel bars. See 13 Pa. C.S. § 2601. ASI accepted all of the steel. See 13 Pa. C.S. 2606(a). Although Bernsten complained about the quality, i.e. that it was oily, poorly packaged, or rusty, he did not reject it. See Ex. 19, Bernsten's 1/17/11 Email to Rohit ("steel that was over oiled and in an ugly state . . . . Will keep you informed as we proceed."); Ex. 20, Bernsten's 1/28/11 Email to Rohit ("Please advise your production manager that the material ran beautifully. . . . heavy oil, torn packing, . . . is something we can fix."); Ex. 21, Bernsten's 2/7/11 Email to Rohit ("this is has been a packaging and container loading disaster"). Instead, ASI sold the steel to customers without seeking Rajat's consent to the sale terms. See 13 Pa. C.S. 2606(c). Bernsten explained "6 bundles went out and I do not have any complaints on the quality to date. This is the only good news at the moment." See id. As a result, ASI was obligated to pay the contract price. ASI paid Rajat only $45,000.00. ASI breached the contract and owes Rajat $153,618.00. See 13 Pa. C.S. 2709(a)(1); Ex. 12, Bernsten's 5/11/10 Email ("I sent you USD $45k in good faith and now I wish I did not.").

ASI asserts a counter breach of contract claim, arguing that Rajat breached their contract by shipping damaged steel bars. However, ASI accepted the goods, and failed to notify Rajat within a reasonable time of an alleged breach of the contract. ASI only complained about the quality of the shipment; it did not reject the steel. Thus, ASI is barred from any remedy for a breach of contract. See 13 Pa. C.S. § 2607(c) (buyer must, within a reasonable time after he discovers the breach, notify the seller of the breach); § 2607(d) (buyer has the burden to establish a breach with respect to accepted goods); Vanalt Elec. Const. Inc. v. Selco Mfg. Corp., 233 F. App'x 105, 111 (3d Cir. 2007) (buyer must prove compliance with Section 2607 before recovering for a breach of contract).

6

ASI also cannot argue that it accepted the nonconforming steel bars and expected Rajat to cure. See 13 Pa. C.S. § 2607. Bernsten complained about the steel's packaging and stated "I am going to market the balance of the material based on the condition. I was waiting for the inspection to see if we can sell at market prices along w/other competitors. We will not be able to do so. I will have to do some discounting to move this material in it's present condition." Ex. 22, Bernsten's 2/9/11 Email to Rohit. Bernsten decided to sell the materials at less than prime rate and told Rohit that he was going to concentrate on moving the materials. See Ex. 23, Bernsten's 2/12/11 Email to Rohit. ASI has failed to show it had a reasonable expectation that Rajat would cure based on its immediate and unilateral action without allowing Rajat an opportunity to cure.[7]

Accordingly, ASI breached the parties' contract and is liable to Rajat for $153,618.00 in damages.[8] Rajat is also entitled to prejudgment interest. See 41 P.S. § 202; Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am., 609 F.3d 143, 172 (3d Cir. 2010) (Pennsylvania law provides for 6% prejudgment interest in actions if a party breached of contract by failing to pay a definite

---

[7] ASI also cannot claim it possessed rejected goods, as it would then have a duty to follow Rajat's reasonable instructions. See 13 Pa. C.S. §§ 2603, 2604. Rajat instructed Bernsten, "[t]he material we send you is all prime material please see if you can sell it to prime buyers that you had in mind because as per you [sic] the quality is accepted." Ex. 23, Rohit's 2/12/11 Email to Bernsten. Bernsten did not follow that instruction and decided to sell the steel as secondary or scrap steel.

[8] ASI also has failed to show that Rajat was responsible for the cost of the storage fees once the steel arrived in the United States. Because the goods were shipped C.I.F, Rajat was only responsible to put the goods into the possession of the carrier at the port for shipment. See 13 Pa. C.S. 2320(b)(1). Although there may have been a problem with Rajat's paperwork due to "missing original bills of lading," it appears that the United States Homeland Security randomly pulled the containers for an inspection. See Ex. 19, Bernsten's 1/17/11 Email to Rohit.

amount of money from the time when the amount was due). The parties are directed to determine the appropriate amount of interest ASI owes.[9]

BY THE COURT:

_____
TIMOTHY R. RICE
United States Magistrate Judge

**ENTERED**

OCT 2 2 2013

**CLERK OF COURT**

---

[9] If the parties cannot agree on the amount of interest ASI owes Rajat, then they shall notify the Court and submit their proposed calculations for restitution.